UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MEGAN DUVAL** | **CIVIL ACTION NO. 22-CV-02286** |
| **Plaintiff,** | **SECTION "D"** |
| **VERSUS** | **JUDGE WENDY B. VITTER** |
| **PHYSICIANS MEDICAL CENTER, LLC, SURGERY PARTNERS, INC., SP MANAGEMENT SERVICES, INC., SP LOUISIANA, LLC, ANDREW KNIZELY, JEANNE OLIVIER, BRITTNEY SONNIER, TARA PELLEGRIN, SCOTT CHAPMAN, SANDRA VINCENT, AND XYZ INSURANCE COMPANIES 1-10** | **MAG. DIV. (4) MAGISTRATE JUDGE KAREN WELLS ROBY** |
| **Defendants.** | |

**MEMORANDUM IN SUPPORT OF EMERGENCY MOTION FOR REVINDICATION**

**I.     INTRODUCTION**

Plaintiff Megan Duval ("Duval") admits that, following her termination, she made a complete forensic image (the "Image")—i.e., a copy—of her company owned and issued laptop (the "Laptop"). Duval did so despite express instructions otherwise.

Worse, the Image contains hundreds of records of Protected Health Information ("PHI") that is subject to the Health Insurance Portability and Accounting Act of 1996 ("HIPAA"). This includes a spreadsheet that lists patients' date of birth, date of service, the procedure done, the doctor attending, and insurance information.

Duval is not authorized to possess the PHI in the Image she wrongfully took. Duval refuses to return the Image and any other information taken. There is no valid justification—any information on the Laptop that may be relevant to Duval's present action can be obtained through the Federal Rules of Civil Procedure.

Defendants Surgery Partners, Inc. ("SP"), SP Management Services, Inc. ("SP Management"), and SP Louisiana, LLC ("SP Louisiana") (collectively, the "SP Defendants") and Physicians Medical Center, LLC ("PMC") are obligated to maintain the confidentiality the PHI that Duval wrongfully took. The SP Defendants and PMC, therefore, bring this Motion on an emergency basis seeking revindication requiring Duval return the Image and any information she took from the SP Defendants and PMC.

The SP Defendants and PMC further ask for its attorneys' fees and costs associated with bringing this Motion. The SP Defendants and PMC finally ask to be permitted to issue expedited discovery to assure Duval no longer possesses HIPAA-protected material.

## II.     FACTUAL CONTEXT

### A.     Megan Duval's Agreements Regarding Confidential Information And Termination

SP Management provides hospital, patient, certification, evaluation, and staff management services to PMC. Founded by a group of community physicians, PMC is a 30-bed acute care hospital located in Houma, 50 miles south of New Orleans. PMC originally opened as an Ambulatory Surgery Center and has since expanded into an acute care facility offering a full range of surgical and ancillary services for both local residents and patients who travel to Houma for their care from across the country. Since 1996, PMC has performed over 75,000 procedures. PMC employs a staff of over one hundred, including fifty plus nurses.

Megan Duval ("Duval") is a former PMC nurse. Duval's employment was managed by the SP Management. As a condition of employment, Duval agreed to comply with all SP Defendants and PMC procedures, including the Code of Conduct, which required personnel, including Duval, keep patient information confidential. Among other things, those policies

prohibit inappropriate possession or theft of property belong to PMC.  There is also a policy on use of electronic communications systems:

> The Company's electronic communication systems are available to authorized users for business purposes. The information on these systems is the Company's property and is not private by, or to its users. The Company has the right to monitor any use and access any data within company systems. By continuing to log in, you acknowledge you will comply with the Company's policy and consent to the Company's monitoring.

(Exhibit 1, Code of Conduct; Exhibit 2, Employee Handbook.)

On June 18, 2022, the SP Defendants requested that Duval—then on long-term disability and with no reason to be using her work-issued computer—return the Laptop because the SP Defendants were conducting an internal investigation that required the forensic review of multiple devices, including Duval's.  When Duval's counsel raised concerns about personal information stored on the Laptop, the SP Defendants' counsel provided assurances that, notwithstanding her decision to place personal information on a company-issued device, it would take measures to ensure that information was segregated by the third-party vendor and not provided to the SP Defendants or their counsel and investigator.  Duval's counsel promised to discuss the matter with her and report back. The SP Defendants' counsel did not receive a response. (Exhibit 3, June 26 Email of Ben Curtis.)

On June 22, 2022, SP's Chief Compliance Offer sent an email to Duval explaining that "the laptop belongs to Surgery Partners, and must be provided to us immediately on request." The email further noted that steps could be taken to sequester Duval's personal information that she placed on the company-issued laptop so it would not be reviewed by SP's counsel.  The email was also unequivocal that "Should you fail to return the device to PMC by 5:00 p.m. today, or remove information before doing so, you will be subject to discipline which may include discharge of your employment." (Exhibit 4, Email of Roxanne Womack.)  Though Duval's counsel responded that

3

Duval would comply, she did not. (Exhibit 3, June 26 Email of Ben Curtis.) Instead, Duval sent an email in the evening on June 22, 2022 making accusations and stating her refusal to return the SP Defendants' property. (Email 4, Email of Roxane Womack.)

In light of Duval's repeated refusal to return the Laptop, the SP Defendants' terminated Duval's employment on July 23, 2022. In doing so, the SP Defendants requested the Laptop be returned immediately and explicitly warned Duval not to "copy, remove or alter any information thereon" the Laptop and "not even turn on the power on." so that its contents be preserved. (Exhibit 5, Email of Sandra Vincent.)

### B. Prior To Returning Her Laptop, Duval Made A Copy Of Her Work Laptop That Contained HIPAA Protected Material

SP received the Laptop on or about June 27, 2022 and engaged John Jorgensen ("Jorgenson") and Sylint Group, Inc. ("Sylint") to conduct a forensic analysis of that Laptop. Jorgenson is the Chief Executive Officer and Senior Forensic Engineer of Sylint, which is an internationally recognized cyber security and data forensics firm that has provided consulting and professional services for cyber security, industrial counter espionage, counter cyber warfare, eDiscovery, and digital data forensic investigations for over 20 years with a total of over 3,150 cases. (Exhibit 6, Declaration of John Jorgensen, at ¶¶ 3-4.)

After conducting a forensic analysis of the Laptop, Jorgenson and Sylint concluded that a copy, or image, of the entire Laptop was professionally made between June 25, 2022 and June 27, 2022. (Jorgenson Declaration at ¶ 11.) Jorgensen and Sylint further concluded that that image contains PHI. (Jorgenson Declaration at ¶ 11.) Jorgensen and Sylint based this conclusion on the following events:

4

> **The Kingston DataTraveler 2.0 Device And Deletion Of Files**

- At 20:51:26 UTC on June 25, 2022, a Kingston DataTraveler 2.0 device—a brand of USB flash drive—was attached to the Laptop. That Kingston DataTraveler 2.0 device was named "CLONEZILL65," which suggests to Jorgensen that it contained Clonezilla, a type of drive cloning and imaging software. (Jorgenson Declaration at ¶¶ 13-14.)

- The Kingston DataTraveler 2.0 device was listed as drive letter D:\ on the Laptop, with folders entitled D:\DESK and D:\DOWN. At 21:09:37 UTC on June 25, 2022, the user explored a subfolder entitled D:\DESK\Megan. Previously, at 20:55:28 UTC, the user explored a folder on the Laptop's Desktop entitled \Desktop\Megan. (Jorgenson Declaration at ¶ 15.)

- During this time period—between 20:55:43 UTC and 21:04:53 UTC the user deleted 486 files from no longer existing folders on the Laptop. The Desktop\Megan\ folder no longer exists on the Laptop. (Jorgenson Declaration at ¶¶ 15-16.)

- Deleted files include files appearing to have SP's and PMC's information, documents prepared in preparation for litigation; and two files with names matching those known to have PHI. (Jorgenson Declaration at ¶¶ 18-20.)

- The Kingston DataTraveler 2.0 device was disconnected from the Laptop at 21:20:51 UTC on June 25, 2022. (Jorgenson Declaration at ¶ 21.)

- The users interactions with the folders "D:\DESK\Megan" on the Kingston DataTraveler 2.0 and "\Desktop\Megan" on the Laptop, the fact that that "\Desktop\Megan\" no longer exists on the Laptop, and the fact that the user deleted

5

486 files within that time period from no longer existing folders, caused Jorgenson and Sylint to reasonably conclude that a folder entitled "Megan" was transferred from the Laptop to the external storage device and that transferred files were some, if not all, of those deleted. (Jorgenson Declaration at ¶ 17.)

➢ **The USB Attached SCSI (UA5) Device And Run Of GetDataBackPro**

- At 21:21:32 UTC on June 25, 2022, a USB Attached SCSI (UA5) device with a volume named "IMAGE" was attached to the Laptop. (Jorgenson Declaration at ¶ 22.)

- SCSI" is an acronym for Small Computer System Interface, which is a computer protocol for moving data to and from storage devices. It transmits at a higher data rate and has more storage options than more common memory devices such as a USB thumb drive. In Jorgenson's experience, SCSI is used by computer service professionals because it is more expensive and often more complicated to use than other memory storage devices. (Jorgenson Declaration at ¶ 23.)

- This particular USB Attached SCSI (UA5) had a name in the Laptop's registry file "JMicron multidisc read/write – 2 slots." This suggested to Jorgenson that multiple devices, such as a hard drive or solid-state drive, were connected through the USB Attached SCSI (UA5). (Jorgenson Declaration at ¶ 24.)

- At 22:35:26 UTC, the file getbprosetup(1).exe was run from an external drive, likely a drive attached to the USB Attached SCSI (UA5), which remained attached to the Laptop. getbprosetup(1).exe is a computer file that installs GetDataBackPro, which is another type of software that clones or copies hard drives. (Jorgenson Declaration at ¶¶ 30-31.)

- At 22:36:44 UTC, the file gdbpro.exe was run on the Laptop, which caused Jorgenson to conclude that, after GetDataBackPro was installed on the Laptop, the program was then in use. (Jorgenson Declaration at ¶ 32.)

- At 22:36:44 UTC an external drive with a volume named "IMAGE" was listed as drive letter D:\ on the Laptop. This likely was a drive attached to the USB Attached SCSI (UA5), which remained attached to the Laptop. Eight seconds later—at 22:34:52 UTC—the file mpduval.IMG was opened or created on that drive. An IMG file is a file used to make a copy of an entire device. (Jorgenson Declaration at ¶¶ 33-35.)

- There was no further activity on the Laptop from the opening or creation of mpduval.IMG on June 25, 2022 at 22:36:52 UTC until June 27, 2022 at 14:47:27 UTC. At this time, the file RenoUn.exe was run to uninstall the "GetDataBackPro" system. Then, at 14:48:26 UTC, the USB Attached SCSI (UA5) device with a volume named "IMAGE" was disconnected from the Laptop. (Jorgenson Declaration at ¶¶ 36-38.)

- Based on the installation and running of GetDataBackPro, the opening or creation of an IMG file titled mpduval.IMG, the use of the USB Attached SCSI (UA5) device with a volume named "IMAGE" and the roughly thirty-nine hours that the Laptop was not in active use following the initialization of GetDataBackPro, Jorgenson concluded that an entire copy of the Laptop was made and transported to an external device. (Jorgenson Declaration at ¶ 40.)

- ➢ **The Presence of PHI On The Laptop**

  - Jorgenson further concluded that a copy of the entire Laptop would include all files presently on the Laptop because there have been no deletions since 21:04:53 UTC on June 25, 2022. (Jorgenson Declaration at ¶ 41.)

  - Further review of the Laptop's files uncovered a file named copyofschedule.xls, located on the Laptop's Desktop in a folder called New Folder. This file included 388 records of PHI—Date of Birth, Name, Date of Service, Procedure, Doctor Information, Insurance Information, and CPT codes. (Jorgenson Declaration at ¶ 42.)

  - There is other patient information on the Laptop, including a file copyofpmcunbilledreport2021.xls, which lists Name, Date of Service, Procedure, Doctor Information, Insurance Information, and CPT codes. (Jorgenson Declaration at ¶ 43.)

  C. **Duval And Her Counsel Confirm An Unauthorized Image Was Taken But Refuse To Return The Image And Information**

After hearing Jorgenson's conclusions, counsel for the SP Defendants emailed Duval's counsel on Friday, July 29, 2022 to notify Duval that her continued possession of PHI may constitute a breach of HIPAA. The SP Defendants' requested that Duval: (1) immediately and permanently delete all copies of any and all information previously contained on her company-owned laptop that continues to be in her possession, including, without limitation, any forensic images and any and all PHI, (2) request that any third parties, including, without limitation, any forensic imaging vendors, that may continue to be in possession of such information immediately and permanently delete such information, and (3) specifically confirm in writing that she has complied with the foregoing requests, that she retains no PHI regarding PMC patients, and that

she is aware of no threats to the privacy or security of any such information. (Exhibit 7, July 29 and August 18 Email of Ben Curtis.)

On August 5, 2022, Duval's counsel responded "I'm out of the office until Monday. I'll give you a call first thing Monday morning." (Exhibit 7, July 29 and August 18 Email of Ben Curtis.) Duval's counsel did not call as promised but instead waited until Thursday, August 11, 2022 to contact the SP Defendants' counsel, leaving a voice mail with phone number. The SP Defendants' counsel called the requested number but Duval's counsel did not pick up or respond to the SP Defendants' counsel's voicemail.

In light of lack of communication, the SP Defendants' counsel sent an email to Duval's counsel on August 17, 2022 further outlining the need for Duval to return the copies she took from her company-issued laptop. Duval's counsel's response confirmed that Duval took the Image of the Laptop but refused to return the Image. (Exhibit 7, July 29 and August 18 Email of Ben Curtis.) Duval has not yet returned the Image.

Now, the SP Defendants' and PMC must seek the Court's assistance to ensure that HIPAA-protected information in Duval's possession is immediately returned.

## III. ANALYSIS

This is a simple matter. Duval admits that she had the Image taken of the Laptop, which belongs to SP Management and/or PMC. Any information on the Laptop related to Duval's employment (including emails and other information) belongs to SP Management. Duval was not authorized to take that Image. Indeed, Duval was expressly told two days prior to the Image being made that she was not to "copy, remove or alter any information thereon" the Laptop and "not even turn on the power on." Yet, Duval turned on the computer and 1) transferred files to a USB device; 2) deleted multiple files; and 3) had a professional forensically copy the contents of the Laptop.

9

Duval wrongful taking of the SP Defendants' and PMC's property must be rectified.

What is more, HIPAA compels the SP Defendants to take steps—including this Motion after Duval's continued insistent that she possess the Image—to ensure that patient information is not compromised.

"Recognizing the importance of protecting the privacy of health information in the midst of the rapid evolution of health information systems, Congress passed HIPAA in August 1996." *South Carolina Med. Ass'n v. Thompson,* 327 F.3d 346, 348 (4th Cir.2003).  This included the so-called "privacy rule," promulgated by the Department of Health and Human Services and found in 45 C.F.R. § 160 and 160.

The privacy rule prohibits "covered entities" (generally health care providers who transmit health information in electronic form, s*ee* 45 C.F.R. § 160.103) from using or disclosing an individual's "protected health information" except where there is patient consent or the use or disclosure is for "treatment, payment, or health care operations." *See* 45 C.F.R. §§ 164.502(a), 164.506.

"Protected health information" is "individually identifiable health information" that is transmitted or maintained in electronic form or otherwise. 45 C.F.R. § 160.103. "Individually identifiable health information" is in turn defined as:

> Individually identifiable health information is information that is a subset of health information, including demographic information collected from an individual, and:
>
> (1)    Is created or received by a health care provider, health plan, employer, or health care clearinghouse; and
>
> (2)     Relates to the past, present, or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present, or future payment for the provision of health care to an individual; and
>
> > i.    That identifies the individual; or

10

>           ii.        With respect to which there is a reasonable basis to believe the information can be used to identify the individual.

45 C.F.R § 160.103.

If there is a "breach" of "unsecured protected health information," the covered entity is required to notify each individual within 60 calendar days of the discovery of the breach. 45 C.F.R. § 164.404(a). If the "breach" of "unsecured protected health information" covers more than 500 residents of a State, the covered entity must also notify prominent media outlets in the jurisdiction. 45 C.F.R. § 164.406. Further, the Secretary of Health and Human Services is required to be notified. 45 C.F.R. § 164.408. HIPAA violations can lead to civil and criminal penalties. *See* 45 C.F.R. § 160.400 *et seq*; 42 U.S.C. § 1320d-6.

A "breach" is presumed if there is "the acquisition, access, use, or disclosure of protected health information in a manner" that is unauthorized and that "compromises the security of privacy of protected information." 45 C.F.R. § 164.402. This presumption may be rebutted if "there is a low probability that the protected health information has been compromised based on a risk assessment of" "the nature and extent of the protected health information involved", "the unauthorized person who used the protected health information or to whom the disclosure was made"; "whether the protected information was actually acquired or viewed"; and "<u>the extent to which the risk of protected health information has been mitigated</u>." 45 C.F.R. § 164.406(2).

Here, Duval has in her possession information that 1) directly identifies the individual by name and date of birth and 2) relates to the past, present, or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present, or future payment for the provision of health care to an individual. *See* 45 C.F.R § 160.103. She has confirmed that she has an entire copy of the Laptop and forensic analysis found that the Image would include hundreds of records that include the procedures each of these individuals underwent

11

and insurance information. (Jorgenson Declaration at ¶¶ 40-43.)   And, because Duval is no longer employed as PMC nurse, she is no longer authorized to retain that information.

If there is no mitigation -- i.e., return of the Image -- then there may be a reportable breach. That is why a court has ordered the return or destruction of such files in a similar instance.  In *Unum Group v. Loftos*, 220 F. Supp. 3d 143 (D. Mass. 2012) a former employee of an insurance provider took documents from his former employer's premises without authorization. *Id*. at 146. This included protected health information and the former employee's possession of that information may have required the employer to notify the individuals of the unauthorized disclosure. *Id*.  The former employee refused to return the documents, claiming they would be needed for a future lawsuit. *Id*.  The court issued an emergency order that the documents be destroyed or otherwise returned:

> There is no question regarding the potential for irreparable harm if the injunction is denied; the documents contain an unknown number of trade secrets and potentially unquantified amounts of private health information that could cause irreparable damage to Unum's business if released.  **In addition, there is minimal hardship to Loftus in requiring the documents be returned, as he can request them during discovery if he proceeds with a lawsuit against Unum**. The hardship to the plaintiff is readily apparent. Unum has a substantial business risk in that it is unable to assure any customers or employees that its information is secure because it has a possible uncontained breach of confidential information. **Unum's interest in recovering its documents also has a substantial overlap with the public interest. Confidential health information should not be held hostage to an unfiled lawsuit, and Unum's customers who are not yet on notice that their health information could have been compromised will be well served by Unum's efforts to contain this information breach**.

*Id*. at 148-49.

So too here.  Without an Order from this Court requiring return of the Image and the unauthorized PHI, the SP Defendants, PMC and patients will be irreparably harmed—the SP Defendants and PMC due to the damage to its business if notification is required under HIPAA and potential statutory penalties, and patients due to the compromise of their health information.

Further, there is no harm to Duval. The SP Defendants had the Laptop forensically imaged once it received the Laptop from Duval, and further have litigation holds in place for this matter. If there are documents on the device that Duval needs for this litigation, she can request them through discovery. It is, moreover, entirely in the public interest to ensure that patients' confidential information is protected.

Further, an award of attorneys' fees and costs for bringing this Motion is appropriate. *Cf. United States ex rel Alvord v. Lakeland Regional Medical Center, Inc.*, No. 8:10-CV-52-T-17EAJ, 2012 WL 12904676 (M.D. Fla. Sept. 14, 2012) (awarding fees and costs where attorneys disclosed PHI through public filing of documents, causing the covered entity to expend money to send HIPAA notice to the affected individuals).

Finally, there is good cause to allow the SP Defendants and PMC to issue expedited discovery that is narrowly tailored to the inspection of any external devices that hosted any Image of the Laptop, as well as the Kingston DataTraveler 2.0 and any devices that possess any information that was transferred from the Laptop besides the image. *See*, e.g.*, J.P. Morgan Securities LLC v. Smith*, No. 22-238-SDD-EWD, 2022 WL 1517153, at *2-3 (M.D. La. Apr. 26, 2022) (allowing expedited discovery to determine what information the defendant took from his previous employer). Without such expedited inspection, the SP Defendants and PMC cannot be assured that the PHI that it knows is in Duval's possession has been returned or otherwise determine if there unknown PHI in Duval's possession that needs to be returned.

## IV.  CONCLUSION

For the foregoing reasons, the SP Defendants and PMC requests this Court issue an order:

1. prohibiting Plaintiff from making any copy of the Image obtained of the Laptop;
2. requiring Plaintiff return any Image obtained of the Laptop;

3.      requiring Plaintiff preserve any external devices that, prior to the return ordered, hosted any image retained of the Laptop;

4.      requiring Plaintiff preserve the Kingston DataTraveler 2.0 and any other external device possess any information transferred the Laptop besides the image;

5.      requiring Plaintiff to return any information transferred from the Laptop besides the Image;

6.      allowing Defendants to issue expedited discovery to inspect any external devices that hosted the Image of the Laptop and to inspect the Kingston DataTraveler 2.0 and any other external devices that and any other external device possess any information besides the Image that was transferred from the Laptop;

5.      requiring Plaintiff to request that any third parties, such forensic imaging vendors, that may continue to be in possession of any information from the Laptop destroy such information;

6.      requiring Plaintiff file a sworn verification of compliance within three days of this Order;

7.      ordering Plaintiff to pay Defendants costs and attorneys' fees associated with bringing this Motion;

8.      ordering any and all other relief this Court deems necessary and just.

        Respectfully submitted,

        **PHELPS DUNBAR LLP**

        BY:   */s/ Kim M. Boyle*
              KIM M. BOYLE (La. #18133)
              MARK D. FIJMAN (#37860)
              REBECCA SHA (La. #35317)
              365 Canal Street, Suite 2000
              New Orleans, Louisiana 70130-6534

Telephone: 504-566-1311
Facsimile: 504-568-9130
Email: kim.boyle@phelps.com
       mark.fijman@phelps.com
       rebecca.sha@phelps.com

**ATTORNEYS FOR DEFENDANTS, SURGERY PARTNERS, INC., SP MANAGEMENT SERVICES, INC., AND SP LOUISIANA, LLC**

**DEUTSCH KERRIGAN, L.L.P.**

BY:   */s/ Duris L. Holmes (with permission)*
     DURIS L. HOLMES (#17629)
     755 Magazine St.
     New Orleans, LA  70130
     Telephone:  (504) 581-5141
     Email: dholmes@deutschkerrigan.com

**ATTORNEYS FOR DEFENDANT, PHYSICIAN MEDICAL CENTER, LLC**