UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MEGAN DUVAL** | **CIVIL ACTION NO. 22-CV-02286** |
| **Plaintiff,** | **SECTION "D"** |
| **VERSUS** | **JUDGE WENDY B. VITTER** |
| **PHYSICIANS MEDICAL CENTER, LLC, SURGERY PARTNERS, INC., SP MANAGEMENT SERVICES, INC., SP LOUISIANA, LLC, ANDREW KNIZELY, JEANNE OLIVIER, BRITTNEY SONNIER, TARA PELLEGRIN, SCOTT CHAPMAN, SANDRA VINCENT, AND XYZ INSURANCE COMPANIES 1-10** | **MAG. DIV. (4)** <br> **MAGISTRATE JUDGE KAREN WELLS ROBY** |
| **Defendant** | |

**SURGERY PARTNERS, INC., SP MANAGEMENT SERVICES, INC.,
SP LOUISIANA LLC, AND PHYSICIANS MEDICAL CENTER, LLC'S
ANSWER AND AFFIRMATIVE DEFENSES TO
FIRST AMENDING AND SUPPLEMENTAL COMPLAINT**

1. Surgery Partners, Inc. ("SP") admits that it is a corporation incorporated in Delaware and is based in Tennessee. SP admits that it operates surgical facilities and ancillary services nationwide, including the operations at Physicians Medical Center, LLC ("PMC") in Houma, Louisiana where SP owns an interest in and manages PMC, supplies staffing of Louisiana employees (including the Plaintiff), and provides services for PMC's Louisiana patients. SP admits that it provides employees, funds and resources to PMC to fulfill the management services that SP Management Services, Inc. ("SP Management") is paid to perform. SP admits that it provides PMC with human resources services, a shared payment processing system for staff wages, email management for staff (including use of an @surgerypartners.com address), benefits and time off, supervision and oversight of PMC employees (including the President, Chief Nursing Officer, Human Resources, and other leadership), recruits new hires, manages the PMC website and

provides content and photography to match the SP website, reviews determinations regarding compensation, requests for promotion, assignment of job duties, leave requests, among other personnel decisions.  SP admits its Louisiana charter number is 42033553F and that it is managed by Jennifer Baldock, Brett Kennedy, Dave Doherty, and Jeff O'Brien.

2.  SP Management admits that it is a Tennessee corporation authorized to do and doing business in Louisiana, including operations at the hospital operated by PMC in Houma, Louisiana where it manages its Louisiana employees and provides services for PMC's Louisiana patients. SP Management admits that its registered office and principal business establishment in Louisiana at 501 Louisiana Avenue, Baton Rouge, LA 70802. SP Management admits that it is managed by Jennifer Baldock, Brett Kennedy, Dave Doherty, and Jeff O'Brien.  SP Management admits that Megan Duval's ("Duval's") paystubs show her benefits came from SP Management. SP Management admits it is owned by SP.

3.  SP Louisiana, LLC ("SP Louisiana") admits that it is a Louisiana limited liability company domiciled at 501 Louisiana Avenue, Baton Rouge, LA 70802.  SP Louisiana admits it is managed by Jennifer Baldock and Dave Doherty.  SP Louisiana admits that it is owned by SP.  SP, SP Management, and SP Louisiana are collectively, the "SP Defendants".

4.  PMC admits that it is a Louisiana Limited Liability company that is domiciled in Houma, Louisiana.  PMC admits that it identifies itself as "A Surgery Partners Company" and that it is owned by both SP and individual physicians who provide services at PMC.  PMC admits that it pays a monthly management fee to SP Management Services, Inc. to provide hospital, patient, certification, evaluation, and staff management services to PMC.

5.  PM admits that, at the times described in the Complaint, it had over 100 employees.

6. SP Management admits that, at the times described in the Complaint, SP and SP Management had over 20 employees.

7. SP Management admits that it employed Duval.

8. SP Management admits that managed Duval's employment, that she utilized an @surgerypartners.com email, that she entered all leave requests through http://www.spconnect.surgerypartners.com" and the same website was used to track Duval's compensation and benefits.

9. The SP Defendants and PMC admit that Duval worked as a nurse at PMC.

10. The SP Defendants and PMC admit that Duval's employment started in 2012.

11. The SP Defendants and PMC admit that Duval's employment was terminated on June 23, 2022 for insubordination.

12. The SP Defendants and PMC admit that this Court has jurisdiction over this Action.

13. The SP Defendants and PMC admit that this Court is the proper venue for this Action.

14. The SP Defendants and PMC admit that, on April 18, 2022, Duval filed a Charge of Discrimination with the EEOC against SP and that the EEOC issued a right to sue letter.

15. Pursuant to Federal Rule of Civil Procedure 8(b)(3), the SP Defendants and PMC generally deny all allegations except those specifically admitted.

16. The SP Defendants and PMC further deny that Plaintiff is entitled to any relief, and request judgment in favor on all claims.

**AFFIRMATIVE DEFENSES:**

1. Plaintiff, by her own conduct, is guilty of unclean hands, which completely bars or reduces recovery, if any, to which she may be entitled.

2. The Complaint, and each cause of action contain therein or some of them, are barred and/or relief may be limited due to after-acquired evidence of the Plaintiff's on-the-job and employment-related misconduct.

3. Count Nine is barred for failure to state claim where Stanwood Duval brings a claim for loss of consortium but has not been named as a party in the title of the First Amending and Supplemental Complaint. *See* Fed. R. Civ. P. 10(a).

**SURGERY PARTNERS, INC., SP MANAGEMENT SERVICES, INC., SP LOUISIANA LLC, AND PHYSICIANS MEDICAL CENTER, LLC'S COUNTERCLAIMS[1]**

1. Following the termination of Duval's employment, the SP Defendants and PMC discovered that Duval has in her possession some Protected Health Information ("PHI") of patients that is protected under the Health Insurance Portability and Accounting Act of 1996 ("HIPAA") and that Duval is no longer authorized to possess. Specifically, Duval took a full forensic image or copy (the "Image") of her company-owned and issued laptop (the "Laptop"), which contains hundreds of patient records. Duval refuses to return the Image.

2. The SP Defendants and PMC are obligated to maintain the confidentiality of patients' PHI.

3. In light of the exigent circumstance and need to protect the PHI that is wrongfully in Duval's possession, the SP Defendants and PMC bring these revindication and spoilation counterclaims even though Duval has not issued summons to the SP Defendants and PMC, and Duval's counsel has ignored the SP Defendants' offer to waive service.

---

[1] These Counterclaims are identical to those filed on August 30, 2022 (Rec. Doc. 5) and not amended but rather included in this pleading for convenience. As of the time of this filing, Counterclaim-Plaintiff, Megan Duval, has not filed a response to these Counterclaims.

4. This Court has jurisdiction over these counterclaims under 28 U.S.C. § 1367 because these claims arise out of the same occurrence that is the subject matter of Duval's claims, and are therefore so related to Duval's action that they form part of the same controversy.

## STATEMENT OF FACTS

*Termination of Duval's Employment*

5. Duval is a former PMC nurse, who was employed SP Management and rendering services at PMC.

6. Duval was issued a laptop (the "Laptop") by PMC and made available for Duval's job functions with SP Management for PMC.

7. Duval agreed to comply with all SP Defendants and PMC procedures, including the Code of Conduct and PMC Employee Handbook.

8. Those policies require personnel, including Duval, keep patient information confidential.

9. Those policies further prohibit inappropriate possession or theft of property belong to PMC.

10. There is also the following policy on electronic communications systems:

> The Company's electronic communication systems are available to authorized users for business purposes. The information on these systems is the Company's property and is not private by, or to its users. The Company has the right to monitor any use and access any data within company systems. By continuing to log in, you acknowledge you will comply with the Company's policy and consent to the Company's monitoring.

11. On June 18, 2022, the SP Defendants requested that Duval—then on long-term disability and with no reason to be using her work-issued computer—return the Laptop because the SP Defendants were conducting an internal investigation that required the forensic review of multiple devices, including Duval's.

12. When Duval's counsel raised concerns about personal information stored on the Laptop, the SP Defendants' counsel provided assurances that, notwithstanding her decision to place personal information on a company-issued device, measures would be taken to ensure that information was segregated by the third-party vendor and not provided to the SP Defendants or their counsel and investigator.

13. Duval's counsel promised to discuss the matter with her and report back.

14. The SP Defendants' counsel did not receive a response.

15. On June 22, 2022, SP's Chief Compliance Offer sent an email to Duval explaining that "the laptop belongs to Surgery Partners, and must be provided to us immediately on request." The email further noted that steps could be taken to sequester Duval's personal information that she placed on the company-issued laptop so it would not be reviewed by the SP Defendants' counsel. The email was also unequivocal that "Should you fail to return the device to PMC by 5:00 p.m. today, or remove information before doing so, you will be subject to discipline which may include discharge of your employment."

16. Duval responded with an email in the evening on June 22, 2022 making accusations and stating her refusal to return the Laptop.

17. In light of Duval's repeated refusal to return the Laptop, the SP Defendants' terminated Duval's employment on July 23, 2022.

18. In doing so, the SP Defendants requested the immediate return of the Laptop and further explicitly warned Duval not to "copy, remove or alter any information thereon" and "not even turn the power on" so that its contents be preserved.

PD.40240842.1

19.     The SP Defendants engaged John Jorgensen ("Jorgenson") and Sylint Group, Inc. ("Sylint") to conduct a forensic analysis of that Laptop.  Duval turned over the Laptop on or about June 27, 2022 and it was provided to Sylint on June 29, 2022 for analysis.

20.     After conducting a forensic analysis of the Laptop, Jorgenson and Sylint concluded that a copy, or image, of the entire Laptop was professionally made between June 25, 2022 and June 27, 2022 (the "Image").

21.     Jorgensen and Sylint further concluded that that the Image contains PHI.

22.     Additionally, despite being told not to remove any information from the Laptop, Duval deleted at least 486 files.

*Details of The Forensic Examination*

23.     At 20:51:26 UTC on June 25, 2022, a Kingston DataTraveler 2.0 device—a brand of USB flash drive—was attached to the Laptop. That Kingston DataTraveler 2.0 device was named "CLONEZILL65," which suggests that it contained Clonezilla, a type of drive cloning and imaging software.

24.     The Kingston DataTraveler 2.0 device was listed as drive letter D:\ on the Laptop, with folders entitled D:\DESK and D:\DOWN.  At 21:09:37 UTC on June 25, 2022, the user explored a subfolder entitled D:\DESK\Megan.  Previously, at 20:55:28 UTC, the user explored a folder on the Laptop's Desktop entitled \Desktop\Megan.

25.     During this time period—between 20:55:43 UTC and 21:04:53 UTC the user deleted 486 files from no longer existing folders on the Laptop. The Desktop\Megan\ folder no longer exists on the Laptop.

26.     Deleted files include files appearing to have the SP Defendants' and PMC's information, documents prepared in preparation for litigation; and two files with names matching those known to have PHI.

7

27. The Kingston DataTraveler 2.0 device was disconnected from the Laptop at 21:20:51 UTC on June 25, 2022.

28. The users interactions with the folders "D:\DESK\Megan" on the Kingston DataTraveler 2.0 and "\Desktop\Megan" on the Laptop, the fact that that "\Desktop\Megan\" no longer exists on the Laptop, and the fact that the user deleted 486 files within that time period from no longer existing folders, caused Jorgenson and Sylint to reasonably conclude that a folder entitled "Megan" was transferred from the Laptop to the external storage device and that transferred files were some, if not all, of those deleted.

29. At 21:21:32 UTC on June 25, 2022, a USB Attached SCSI (UA5) device with a volume named "IMAGE" was attached to the Laptop.

30. "SCSI" is an acronym for Small Computer System Interface, which is a computer protocol for moving data to and from storage devices. It transmits at a higher data rate and has more storage options than more common memory devices such as a USB thumb drive. SCSI is used by computer service professionals because it is more expensive and often more complicated to use than other memory storage devices.

31. This particular USB Attached SCSI (UA5) had a name in the Laptop's registry file "JMicron multidisc read/write – 2 slots." This means multiple devices, such as a hard drive or solid-state drive, were connected through the USB Attached SCSI (UA5).

32. At 22:35:26 UTC, the file getbprosetup(1).exe was run from an external drive, likely a drive attached to the USB Attached SCSI (UA5), which remained attached to the Laptop. getbprosetup(1).exe is a computer file that installs GetDataBackPro, which is another type of software that clones or copies hard drives.

PD.40240842.1

33. At 22:36:44 UTC, the file gdbpro.exe was run on the Laptop, which means that, after GetDataBackPro was installed on the Laptop, the program was then in use.

34. At 22:36:44 UTC an external drive with a volume named "IMAGE" was listed as drive letter D:\ on the Laptop. This likely was a drive attached to the USB Attached SCSI (UA5), which remained attached to the Laptop. Eight seconds later—at 22:34:52 UTC—the file mpduval.IMG was opened or created on that drive. An IMG file is a file used to make a copy of an entire device.

35. There was no further activity on the Laptop from the opening or creation of mpduval.IMG on June 25, 2022 at 22:36:52 UTC until June 27, 2022 at 14:47:27 UTC. At this time, the file RenoUn.exe was run to uninstall the "GetDataBackPro" system. Then, at 14:48:26 UTC, the USB Attached SCSI (UA5) device with a volume named "IMAGE" was disconnected from the Laptop.

36. Based on the installation and running of GetDataBackPro, the opening or creation of an IMG file titled mpduval.IMG, the use of the USB Attached SCSI (UA5) device with a volume named "IMAGE" and the roughly thirty-nine hours that the Laptop was not in active use following the initialization of GetDataBackPro, Jorgenson concluded that an entire copy of the Laptop was made and transported to an external device.

*The Presence of PHI On The Laptop*

37. The Image would include all files presently on the Laptop because there have been no deletions since 21:04:53 UTC on June 25, 2022.

38. Further review of the Laptop's files uncovered a file named copyofschedule.xls, located on the Laptop's Desktop in a folder called New Folder. This file included 388 records of PHI—Date of Birth, Name, Date of Service, Procedure, Doctor Information, Insurance Information, and CPT codes.

9

39. There is other patient information on the Laptop, including a file copyofpmcunbilledreport2021.xls, which lists Name, Date of Service, Procedure, Doctor Information, Insurance Information, and CPT codes.

*Duval Ignores Request To Destroy The Image and PHI*

40. Counsel for the SP Defendants emailed Duval's counsel on Friday, July 29, 2022 to notify Duval that Duval's continued possession of PHI may constitute a breach of HIPAA.

41. In this email, the SP Defendants requested that Duval: (1) immediately and permanently delete all copies of any and all information previously contained on her company-owned laptop that continues to be in her possession, including, without limitation, any forensic images and any and all PHI, (2) request that any third parties, including, without limitation, any forensic imaging vendors, that may continue to be in possession of such information immediately and permanently delete such information, and (3) specifically confirm in writing that she has complied with the foregoing requests, that she retains no PHI regarding PMC patients, and that she is aware of no threats to the privacy or security of any such information.

42. Counsel for the SP Defendants asked for a confirmation within 7 days.

43. On August 5, 2022, Duval's counsel responded "I'm out of the office until Monday. I'll give you a call first thing Monday morning."

44. Duval's counsel did not call as promised but instead waited until Thursday, August 11, 2022 to contact SP Defendants' counsel, leaving a voice mail with phone number.

45. The SP Defendants' counsel called the requested number but Duval's counsel did not pick up or respond to the SP Defendants' counsel's voicemail.

46. In light of lack of communication, the SP Defendants' counsel sent an email to Duval's counsel on August 17, 2022 further outlining the need for Duval to destroy the copies she

took from her company-issued laptop and asked for a response by close of business on August 18, 2022.

47. Duval's counsel responded at the end of day on August 18, 2022. That response did not dispute that Duval had the Image made of her Laptop but did not offer assurances that the Image containing PHI would be returned.

48. Duval has yet to return the Image.

## CAUSE OF ACTION

*Count I: Revindication (La. Civ. Cod. Art. 526)*

49. The SP Defendants and PMC reincorporate and reallege paragraphs 1 through 48 as if fully set forth herein.

50. The SP Defendants and PMC possess and protect PHI of patients who use PMC's services.

51. The Laptop belongs to SP Management and/or PMC, and all information on the Laptop related to Duval's employment (including emails and other information) belongs to SP Management and/or PMC.

52. Duval obtained and holds an Image of the Laptop that includes, among other things, PHI.

53. Duval's actions were unauthorized, wrongful, and without right.

54. Pursuant to La. Civ. Code Art. 526, the SP Defendants and PMC are entitled to judgment recognizing their ownership and ordering delivery to them.

*Count II: Intentional Spoilation of Evidence*

55. The SP Defendants and PMC reincorporate and reallege paragraphs 1 through 48 as if fully set forth herein.

56. Following the termination of her employment, the SP Defendants and PMC instructed Duval to not "copy, remove or alter any information thereon" the Laptop" and "not even turn on the power on." so that its contents be preserved.

57. Duval had already filed a charge with the EEOC and threatened litigation.

58. Two days later, Duval deleted at least 486 files from the Laptop prior to taking a forensic image of the Laptop and prior to returning the Laptop to the SP Defendants and PMC.

59. Duval is liable to the SP Defendants and PMC for her intentional spoilation of evidence under Louisiana Civil Code article 2315. *See Matter of Lasala*, No. 18-11057 c/w 18-11138, 19-9706, 19-9798, 19-9819, 2020 WL 6938807 (E.D. La. Nov. 25, 2020).

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

1. an order prohibiting Plaintiff from making a copy of the Image obtained from the Laptop;

2. requiring Plaintiff preserve any external devices that, prior to the return ordered, hosted any Image obtained from the Laptop;

3. requiring Plaintiff return any Image obtained from the Laptop;

4. requiring Plaintiff preserve the Kingston DataTraveler 2.0 and any other external device possess any information transferred the Laptop from besides the Image;

5. requiring Plaintiff to return any information transferred from the Laptop besides the Image.

6. Damages for Plaintiff's intentional spoilation of evidence in an amount to be determined at trial.

7. all other further relief that may be necessary and appropriate.

Respectfully submitted,

| | |
|---|---|
| **DEUTSCH KERRIGAN, L.L.P.** | **PHELPS DUNBAR LLP** |
| By: */s/ Duris L. Holmes (with permission)*<br>Duris L. Holmes (#17629)<br>755 Magazine Street<br>New Orleans, LA 70130<br>Telephone: (504) 581-5141<br>dholmes@deutschkerrigan.com | By: */s/ Kim M. Boyle*<br>Kim M. Boyle La. Bar No. 18133<br>Canal Place \| 365 Canal Street, Suite 2000<br>New Orleans, Louisiana 70130<br>Telephone: 504 566 1311<br>Facsimile: 504 568 9130<br>Email: kim.boyle@phelps.com |
| **ATTORNEYS FOR DEFENDANT PHYSICIANS MEDICAL CENTER, LLC** | |

AND

**MCDERMOTT WILL & EMERY LLP**

Rachel B. Cowen (*pro hac vice*)
J. Barrick Bollman (*pro hac vice*)
444 W. Lake Street, Ste. 4000
Chicago, IL 60606
Telephone: (312) 372-2000
rcowen@mwe.com
jcnemeth@mwe.com
bbollman@mwe.com

**ATTORNEYS FOR SURGERY PARTNERS, INC., SP MANAGEMENT SERVICES, INC., AND SP LOUISIANA, LLC**

PD.40240842.1