**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **MEGAN DUVAL** | **CIVIL ACTION** |
| **VERSUS** | **NO:   22-2286** |
| **PHYSICIANS MEDICAL CENTER, LLC,** | **SECTION: "D" (4)** |
| **SURGERY PARTNERS, INC., SP** | |
| **MANAGEMENT SERVICES, INC., SP** | |
| **LOUISIANA, LLC, ANDREW KNIZELY,** | |
| **JEANNE OLIVIER, BRITTNEY SONNIER,** | |
| **TARA PELLEGRIN, SCOTT CHAPMAN,** | |
| **SANDRA VINCENT, AND XYZ INSURANCE** | |
| **COMPANIES 1-10** | |

<u>**REPORT AND RECOMMENDATION**</u>

Before the Court is an **Emergency Motion for Revindication (R. Doc. 6)** filed by

Defendants Surgery Partners, Inc. ("SP"), SP Management Services, Inc. ("SP Management"), and

SP Louisiana, LLC ("SP Louisiana") (collectively, the "SP Defendants") and Physicians Medical

Center, LLC ("PMC"). In their motion, SP Defendants and PMC seek an Order from the Court

requiring Plaintiff, Megan Duval ("Duval" or "Plaintiff"), to return the Image and any information

that she took from SP Defendants and PMC. The SP Defendants further ask for its attorneys' fees

and costs associated with bringing this Motion. The SP Defendants finally ask to be permitted to

issue expedited discovery to assure Duval no longer possesses HIPAA-protected material. The

motion is unopposed. This matter was referred to the undersigned under 28 U.S.C. § 636 (b)(1)(B)

and (C).

I.     <u>Background</u>

    A.     **Introduction**

On July 22, 2022, Plaintiff filed suit against Defendants alleging that she discovered billing

discrepancies while working as the Chief Nursing Officer at the physicians Medical Center of

Houma, a hospital specializing in surgical implants. R. Doc. 1. In 2019, Duval alleges that she

discovered billing discrepancies at the hospital. *Id*. Duval contends that in some cases, the hospital was overcharging Medicare for procedures, and in other cases billing Medicare for medications that were never administered. *Id*. at 1. Duval contends that she reported this to her superiors and it resulted in broad changes to the hospital's billing practices, and a shareholder lawsuit against the owners of the hospital. *Id*.

In 2020, Duval alleges that the hospital hired a new CEO, Andrew Knizely ("Knizely"). *Id*. Duval contends that when Knizely learned that she had been a whistleblower, he began a campaign of harassment in an effort to force her out based on her gender and whistleblower activities. *Id*. at 2. Specifically, Duval alleges that Knizely began telling employees that Ms. Duval had "slept her way to the top" and that she was using sexual relations with doctors as "blackmail." Duval contends that Knizely even falsely said she had made sexual advances on him. *Id*.

Duval alleges that when she was on FMLA leave due to COVID-19, Defendants replaced her, removed her from her position as Chief Nursing Officer, and offered her a demoted replacement position. *Id*. Further, Duval contends that the hospital also refused to accommodate – or even respond to – her requests for accommodation as she recovered from long COVID symptoms. *Id*.

Duval alleges that Defendants conducted an "internal investigation." *Id*. Duval contends that among the evidence the internal investigation received was an employee affidavit that swore that Defendants were attempting to "get rid" of Duval "at any cost" due to her discovery of billing issues that resulted in a lawsuit. *Id*. Duval contends that although employees confessed, under oath and in audio recordings, the treatment of Duval, Defendants' investigation resulted in no terminations or discipline whatsoever – except a reprimand against Duval herself because she

"behaved inappropriately." *Id*. Duval alleges that because Defendants refused to take any measures for accountability, she now brings this lawsuit. *Id*. at 3.

Duval brings claims against Defendants for violations of the False Claims Act, Title VII, the Equal Pay Act, the Americans with Disability Act, the Rehabilitation Act, the Louisiana Employment Discrimination Law, the Louisiana Human Rights Act, the Family Medical Leave Act, and other laws.

### B.      Instant Motion

SP Defendants and PMC filed the instant motion on August 30, 2022. R. Doc. 6. SP Defendants and PMC allege that Duval admits that, following her termination, she made a complete forensic image (the "Image")—i.e., a copy—of her company owned and issued laptop (the "Laptop"). *Id*. at 1. Further, SP Defendants and PMC allege that Duval did so despite express instructions otherwise. *Id*. SP Defendants and PMC allege that the Image contains hundreds of records of Protected Health Information ("PHI") that is subject to the Health Insurance Portability and Accounting Act of 1996 ("HIPAA"). *Id*. Specifically, SP Defendants and PMC contend that this includes a spreadsheet that lists patients' date of birth, date of service, the procedure done, the doctor attending, and insurance information. *Id*.

SP Defendants and PMC argue that Duval is not authorized to possess the PHI in the Image she "wrongfully" took. *Id*. Furthermore, SP Defendants and PMC allege that Duval refuses to return the Image and any other information taken. *Id*. SP Defendants and PMC contend that there is no valid justification for Duval's actions and any information on the Laptop that may be relevant to her present action can be obtained through the Federal Rules of Civil Procedure. *Id*. It is SP Defendants' and PMC's position that they are obligated to maintain the confidentiality of the PHI that Duval "wrongfully" took. *Id*. at 3.

On September 22, 2022, SP Defendants and PMC filed a supplemental memorandum in support of their instant motion and requested an evidentiary hearing. R. Doc. 33. In the memorandum, SP Defendants and PMC allege that Duval attempted to return a device that was never connected to the Laptop and "pass it off" as the device to which she had connected. *Id*. at 1. SP Defendants and PMC further allege that it appears that after the instant motion was filed, Duval's consultant spoliated evidence that would show whether she had accessed the information. *Id*.

## II.   <u>Standard of Review</u>

Pursuant to 28 U.S.C. § 636 (b)(1)(A), generally, in a case in which the parties have not consented to have the case proceed before a magistrate judge, "a magistrate judge may determine pretrial matters, conduct evidentiary hearings, and file proposed findings and recommendations." *Jones v. Johnson*, 134 F. 3d 309, 310 (5th Cir. 1998). Therefore, in accordance with 28 U.S.C. 636, the District Judge referred the matter to the undersigned.

## III.   <u>Analysis</u>

### A.   **Duval's Agreements Regarding Confidential Information and Termination**

The record reflects that SP Management provides hospital, patient, certification, evaluation, and staff management services to PMC. R. Doc. 6-1, p. 2. Founded by a group of community physicians, PMC is a 30-bed acute care hospital located in Houma, 50 miles south of New Orleans. *Id*. PMC originally opened as an Ambulatory Surgery Center and has since expanded into an acute care facility offering a full range of surgical and ancillary services for both local residents and patients who travel to Houma for their care from across the country. *Id*.

SP Defendants and PMC contend that Duval is a former PMC nurse, and that her employment was managed by SP Management. *Id*. As a condition of employment, SP Defendants

and PMC allege that Duval agreed to comply with all SP Defendants and PMC procedures, including the Code of Conduct, which required personnel, including Duval, to keep patient information confidential. *Id*. Among other things, SP Defendants and PMC allege that those policies prohibit inappropriate possession or theft of property belong to PMC. *Id*. 2-3.

On June 18, 2022, the SP Defendants requested that Duval—then on long-term disability and with no reason to be using her work-issued computer—return the Laptop because the SP Defendants were conducting an internal investigation that required the forensic review of multiple devices, including Duval's. *Id*. at 3. SP Defendants and PMC contend that Duval's counsel raised concerns about personal information stored on the Laptop. *Id*. Therefore, the SP Defendants' counsel contends that it provided assurances that, notwithstanding Duval's decision to place personal information on a company-issued device, it would take measures to ensure that information was segregated by the third-party vendor and not provided to the SP Defendants or their counsel and investigator. *Id*. Duval's counsel promised to discuss the matter with Duval and report back. *Id*. However, the SP Defendants' counsel allege that they did not receive a response. *Id*.

On June 22, 2022, SP Defendants and PMC allege that SP's Chief Compliance Offer sent an email to Duval explaining that "the laptop belongs to Surgery Partners and must be provided to us immediately on request." *Id*. SP Defendants and PMC contend the email further noted that steps could be taken to sequester Duval's personal information that she placed on the company-issued laptop so it would not be reviewed by SP's counsel. *Id*. Specifically, SP Defendants and PMC allege that the email stated that "Should you fail to return the device to PMC by 5:00 p.m. today, or remove information before doing so, you will be subject to discipline which may include discharge of your employment." *Id*. Instead, SP Defendants and PMC contend that Duval sent an

email in the evening on June 22, 2022 making accusations and stating her refusal to return the SP

Defendants' property. *Id*. at 4.

In light of Duval's repeated refusal to return the Laptop, the SP Defendants' terminated

Duval's employment on July 23, 2022. *Id*. In doing so, the SP Defendants requested the Laptop be

returned immediately and explicitly warned Duval not to "copy, remove or alter any information

thereon" the Laptop and "not even turn on the power on." so that its contents be preserved. *Id*.

### B.     Prior To Returning Her Laptop, Duval Made A Copy Of Her Work Laptop That Contained Alleged HIPAA Protected Material

SP Defendants and PMC allege that SP received the Laptop on or about June 27, 2022 and

engaged John Jorgensen ("Jorgenson") and Sylint Group, Inc. ("Sylint") to conduct a forensic

analysis of that Laptop. *Id*. Jorgenson is the Chief Executive Officer and Senior Forensic Engineer

of Sylint. *Id*. SP Defendants and PMC contend that Sylint is an internationally recognized cyber

security and data forensics firm that provides consulting and other professional services. *Id*.

After conducting a forensic analysis of the Laptop, SP Defendants and PMC allege that

Jorgenson and Sylint concluded that a copy, or image, of the entire Laptop was professionally

made between June 25, 2022 and June 27, 2022. *Id*. SP Defendants and PMC allege that Jorgensen

and Sylint further concluded that that image contains PHI. *Id*. at 4-8.

### C.     Duval's Refusal to Return the Image and Information

After hearing Jorgenson's conclusions, counsel for the SP Defendants emailed Duval's

counsel on Friday, July 29, 2022 to notify Duval that her continued possession of PHI documents

may constitute a breach of HIPAA. *Id*. at 8. The SP Defendants' requested that Duval: (1)

immediately and permanently delete all copies of any and all information previously contained on

her company-owned laptop that continues to be in her possession, including, without limitation,

any forensic images and any and all PHI, (2) request that any third parties, including, without

limitation, any forensic imaging vendors, that may continue to be in possession of such information immediately and permanently delete such information, and (3) specifically confirm in writing that she has complied with the foregoing requests, that she retains no PHI regarding PMC patients, and that she is aware of no threats to the privacy or security of any such information. *Id.*

On August 5, 2022, SP Defendants and PMC contend that Duval's counsel responded assuring them that Duval would be contacting Defendants that following Monday (August 8, 2022). *Id.* at 9. However, SP Defendants and PMC allege that Duval's counsel did not call as promised but instead waited until Thursday, August 11, 2022 to contact the SP Defendants' counsel, leaving a voicemail with phone number. *Id.* SP Defendants and PMC contend that the SP Defendants' counsel called the requested number but Duval's counsel did not pick up or respond to the SP Defendants' counsel's voicemail. *Id.*

In light of the lack of communication, SP Defendants and PMC allege the SP Defendants' counsel sent an email to Duval's counsel on August 17, 2022 further outlining the need for Duval to return the copies she took from her company-issued laptop. *Id.* SP Defendants and PMC aver that Duval's counsel's response confirmed that Duval took the Image of the Laptop but refused to return the Image. *Id.* SP Defendants and PMC contend that Duval has not yet returned the Image. *Id.*

Following the filing of the Revindication Motion, SP Defendants and PMC contend that Duval's counsel acknowledged that Duval retained an information technology consultant named Patrick Ring ("Ring"), who did move files from the Laptop and then backed up the Western Digital external hard disk drive. R. Doc. 33, p. 2.

On September 1, 2022, SP Defendants and PMC allege that Duval's counsel agreed to return both devices to 4Discovery, a forensic expert engaged by the SP Defendants and PMC. *Id.*

SP Defendants and PMC contend that Duval's counsel also agreed to provide a sworn affidavit from Ring stating in material part: 1) he had been in *exclusive* possession of both portable storage devices since June 25, when the information was copied onto them; and 2) neither he, Duval or anyone else had ever reviewed or copied any information from those devices. *Id*. at 2-3.

SP Defendants and PMC allege that Duval's counsel, however, insisted that a Kingston Traveler Device 2.0 to which the select files had been copied contained *only* personal information, including communications with her prior counsel, and denied the device included *any* patient information. *Id*. at 3. Further, SP Defendants and PMC allege that Ring claimed that the same information had not been removed from the Western Digital external hard disk drive. *Id*. Therefore, SP Defendants and PMC contend that Duval's counsel only agreed to return the drives if the SP Defendants and PMC initially limited review to a listing of the names of the files on the devices and metadata showing the date the files were created and the date the files were "last accessed." *Id*. SP Defendants and PMC contend that if the files were last accessed on June 25 (the same day they were saved to the devices), it would independently corroborate Mr. Ring's attestation that the files had not been copied or reviewed after being saved to the drives. *Id*.

In order to expedite the return of the information at issue and allow the SP Defendants and PMC the ability to determine if HIPAA notice was necessary for those patients whose information was on the drive, the SP Defendants and PMC agreed to such limited review. *Id*. Further, in light of this agreement, SP Defendants and PMC allege that they agreed to postpone the submission date of the Revindication Motion. *See* R. Doc. 13.

Unfortunately, SP Defendants and PMC contend that Duval and her counsel took another two weeks to return certain devices to 4Discovery. *Id*. Upon reviewing the devices, files names and metadata, however, SP Defendants and PMC allege that 4Discovery determined that Ring

never actually returned the **Kingston** Data Traveler 2.0 device serial numbered 0810242122110&0 that was connected to Ms. Duval's Company issued computer on June 25, 2022. *Id*. at 4. Instead, SP Defendants and PMC contend the package included a 32 GB SanDisk flash drive serial numbered BM180526375B. *Id*. SP Defendants and PMC allege that this SanDisk device is not listed as ever being connected to Duval's Company-issued Laptop. *Id*. Moreover, SP Defendants and PMC allege that all files created on this flash drive were created on September 13, 2022—the day before Ring mailed it, and not June 25, 2022, when the files were saved to the Kingston Data Traveler 2.0 device. *Id*.

SP Defendants and PMC contend that Counsel for the SP Defendants "immediately" confronted Duval's counsel about this apparent "bait and switch of the devices." *Id*. In response, SP Defendants and PMC allege that Duval's counsel confirmed that Ring transferred the files from the Kingston Data Traveler 2.0 device to the 32 GB SanDisk drive. *Id*. Further, SP Defendants and PMC contend that Ring allegedly wiped all the data, including the metadata showing when the files were last accessed from the Kingston Data Traveler 2.0 device. *Id*. SP Defendants and PMC contend this was not consistent with both Duval's counsel's prior representations and an affidavit by Ring. *Id*. at 5.

SP Defendants and PMC contend the Kingston Data Traveler 2.0 device remains in Ring's possession and has yet to be returned, despite a request that Ring send via overnight, next day mail, or surrender the device locally on Saturday September 17, 2022. *Id*.

SP Defendants and PMC allege that the forensic examination of the 32 GB SanDisk drive—*i.e.,* what was copied from the Kingston Data Traveler 2.0 device—confirms the presence of PHI. *Id*. SP Defendants and PMC contend that the file listing for the files on that device lists a file named "**copyofschedule.xls**." *Id*. SP Defendants and PMC further contend that this matches a

file bearing the same name found on the Laptop, which contains the Date of Birth, Name, Date of Service, Procedure, Doctor Information, Insurance Information, and CPT codes for 388 Individuals. *Id.* SP Defendants and PMC aver that it appears there may be an additional sixteen files containing PHI. *Id.*

Further, SP Defendants and PMC contend that even a cursory review of the file names shows that the lion's share of information are business records or forms of SP and PMC. *Id.*

Accordingly, counsel for SP Defendants requested that SP Defendants and PMC be permitted to immediately review the drive to identify patient information taken in the event that Duval's duplicity ultimately requires notice be sent out according to HIPAA. *Id.* at 6. The SP Defendants and PMC believe that if notice is required, it likely needs to be sent by September 26.

SP Defendants and PMC allege that Duval's counsel refused, on grounds that there may be attorney-client privileged information on the flash drives. *Id.* Specifically, SP Defendants and PMC contend that the first dozen files appear to be redlined drafts of an internal complaint of discrimination that Duval filed in February of 2022. *Id.*

SP Defendants and PMC argue that Duval's counsel's assertion of privilege is misguided. Applying the federal common law of the Fifth Circuit, *United States ex rel. Ray v. GSD&M Idea City LLC.*, No. 3:11-cv-1154-O, 2012 WL 12925016 (N.D. Tex. May, 14, 2012) and *In re Royce Homes, LP*, 449 B.R. 709 (Bankr. S.D. Tex. 2011) SP Defendants and PMC argue that caselaw explains that the attorney-client privilege is waived where explicit and straightforward guidelines or policy make clear the employee has no reasonable expectation of privacy in information placed on a company laptop. *Id.*

Here, SP Defendants and PMC argue that Duval was on notice that she should not expect anything placed on the Laptop— including the files later copied to the Kingston Data Traveler

device and apparently others—to be confidential. *Id*. at 7. By placing allegedly attorney-client privileged information on her company owned and issued laptop despite being on notice that such information would not be kept private, SP Defendants and PMC contend Duval waived privilege to those documents. *Id*.

Thus, SP Defendants and PMC argue that the Court should grant counsel for the SP Defendants and PMC the right to review all of the contents thereon to immediately determine if HIPAA notice need be sent. *Id*.

### D.    Spoliation Concerns

As noted above, when Ring apparently deleted the contents of the Kingston Data Traveler 2.0 device, SP Defendants and PMC allege Ring deprived the SP Defendants and PMC of the ability to corroborate that no one had accessed or copied the information contained thereon. *Id*. at 9. Further, SP Defendants and PMC contend that given Ring's and Duval's lack of candor to date, the SP Defendants and PMC do not believe they can reasonably rely upon Ring's sworn affidavit to determine if it is a low probability that PHI has been disclosed. *Id*.

Now, the SP Defendants' and PMC seek the Court's assistance to ensure that HIPAA protected information allegedly in Duval's possession is immediately returned. *Id*.

### E.    Evidentiary Hearing

On November 2, 2022, the Court conducted an evidentiary hearing to address the matters involved in SP Defendants' and PMC's instant motion. Once the hearing commenced, Duval's counsel identified for the Court, three issues that the parties sought to address, relative to the instant motion. Counsel for SP Defendants and PMC agreed to the scope identified by Duval's counsel. These issues are (1) What did Patrick Ring (Duval's retained forensic expert) do with the data once he downloaded the files from Duval's company-issued Laptop to the Western Digital external hard

disk drive?; (2) Where did this data go once Ring downloaded it? Or in other words, was the data provided to anyone else?; and (3) Whether Duval was involved in what Ring did, and retain documents of HIPAA protected information?

### 1.    Return of Devices and Chad Gogh's Metadata Review

Duval's counsel stated that all of the alleged devices at issue have been retuned. Therefore, Duval's counsel asserted that any clam of privilege as to the devices and the information stored on them has been waived. Also, Chad Gogh ("Gogh"), SP Defendants' and PMC's retained forensic expert, conducted a metadata review of the devices and made several findings. Gogh testified in accordance with his declaration. *See* R. Doc. 33-1, Exhibit 1. Specifically:

1. The **Western Digital MyPassport** was returned on <u>**September 13, 2022**</u>. This device is the external hard disk that the Laptop images were transferred to from the Western Digital NVMe SSD Drive.
   a.  Metadata Review:
       i.  External hard disk containing three (3) images of the Laptop that were copied onto drive on August 9 and 10, 2022; This was confirmed by corresponding transfers on the Western Digital NVMe SSD device.
       ii. Unexplained access on August 17, 2022.
2. The **32 GB SanDisk Flash Drive** was returned on <u>**September 15, 2022**</u>. This device contained original flash drive files transferred from Laptop and was later a substitute for the flash drives transferred from the Kingston DataTraveler 2.0 Flash Drive.
   a.  Metadata Review:
       i.  All files created on September 13, 2022, with file paths not matching. The paths noted in J. Jorgenson's forensic review of the Laptop shows that the file paths were created on the Kingston DataTraveler 2.0 Device.
3. The **Western Digital NVMe SSD Drive** was returned on <u>**September 16, 2022**</u>. This device was used to temporarily hold the three (3) images of the Laptop, then after the images were transferred, one image was deleted.
   a.  Metadata Review:
       i.   Contains two (2) images of the Laptop created June 25, 2022.
       ii.  On August 9 and 10, 2022 images were transferred from the Western Digital NVMe SSD Drive to Western Digital MyPassport.
       iii. Unexplained accesses on August 17, 2022, September 12, 2022, and September 13, 2022.

4. The **Kingston DataTraveler 2.0 Flash Drive** was returned on **September 20, 2022**. This device held files transferred from Laptop until September 13, 2022, and then these files were transferred to 32 GB SanDisk Flash Drive.
   a. Metadata Review:
      i. Gogh testified it appears the device was reformatted and wiped at unknown date.
   b. Gogh testified that when he received this device, it appeared that some type of "solution software" had been used to wipe the device clean. No data present or recoverable.
5. The **Western Digital 3.5" 2TB Hard Disk Drive** was returned on **September 20, 2022**. This device was used as "temporary data storage" for the transfer of data from Laptop to Western Digital MyPassport, and then to 32 GB SanDisk Flash Drive.
   a. Metadata Review:
      i. Gogh testified it appears this device was reformatted and wiped at unknown date but at one point it was connected to Laptop.
   b. Gogh testified that when he received this device, it appeared that some type of "solution software" had been used to wipe the device clean. Further, Gogh testified that there was no data present and no data recoverable.

After Gogh testified about his findings on the devices, he explained that a file's "last access date" is the absolute last access date and there is not a previous "last access date" that can be seen.

### 2.    Duval's Testimony

Defendants' counsel conducted an examination of Duval during the hearing. During Duval's testimony, Defendants' counsel asked Duval questions regarding her delay in returning her company-issued Laptop. Duval explained that her delay in returning the Laptop was because she wanted to preserve the data that evidenced the improper billing, it contained privileged communication with her lawyers, as well as personal health information. Specifically, Duval testified that the Laptop contained a folder identified as "Megan."

Defendants' counsel then began to question Duval about the files contained in the "Megan" folder. Duval testified that the types of documents contained in the "Megan" folder consisted of several types of files/documents including: policy procedures, American Operating Room Nursing Organization (AORN) files, edits, evaluation tools for employees, jobs and duties, and a "daily

huddle review." PMC's counsel asked Duval about the purpose of saving these files into multiple files to which Duval explained that it was to make these files/documents more "readily available" to review. Duval testified that not all of the files/documents in the "Megan" folder were for improper billing and that it was also used as her working folder. Further, Duval testified that when she filed this lawsuit in 2022, she was still employed with PMC and was lawfully in possession of the files.

Duval then began testifying about the series of events that occurred after her termination of employment with PMC. Duval was terminated on June 24, 2022. In the termination email from PMC it requested that all company property, including the Laptop, should be returned, and that Duval was under an obligation to preserve any information on the Laptop.

Following Duval's termination, at or around June 25, 2022, Duval testified that she and her husband, Stan Duval, Plaintiff's husband who is an attorney, delivered the laptop to their retained forensic expert, Ring. Duval testified that she did not have a conversation with Ring, but that she did instruct her husband to tell Ring to "separate" the information on the Laptop, and preserve the information to ensure it was secure. Duval indicated that separating the information meant removing the "Megan" folder from the device (Laptop) that would be returned. Duval stated that she instructed Ring to remove the "Megan" folder because she "didn't trust Surgery Partners to preserve it the way it should have." It is Duval's position that she wanted the information contained on the "Megan" folder to be available to "everybody", and that it was not meant to be deleted or destroyed.

There were a couple of clarifications Duval made for the Court. First, Duval testified that she first met with Ring, physically, on October 31, 2022, and prior to, had never had a conversation or written communication with him. Second, Duval testified that with regard to HIPAA-related

information, to the extent that any existed, she never divulged that information to anyone else that was not affiliated with PMC or Surgery Partners. However, Duval did state that she had the occasion to send PMC information to her personal e-mail address.

### 3.      Patrick Ring's Testimony

Defendants' counsel questioned Ring about the instructions given to him with regards to removing files from the Laptop and his affidavit. Ring testified that the instructions from Mr. Duval were to remove certain files from the Laptop, and then copy, or make an "image" of the remaining contents. Ring indicated that while he was instructed to keep the information secure, he was not given instructions about confidentiality or preserving the information. Ring testified that there were initially 18 files given to him in a list from a screenshot that he was instructed to remove from the Laptop.

Once he noticed the "Megan" folder, Ring stated that he inquired about it and was instructed by Mr. Duval to "offload" the folder from the Laptop, onto another device. Thereafter, Ring testified that he plugged in the Western Digital NVMe device into the Laptop through a USB to NVMe adapter. This allowed Ring to store the subsequent image files directly from the Laptop to an NVMe storage device, the 1 TB NVMe. Ring indicated that two images were copied onto that device. Ring testified that the first image was made prior to that by extracting the NVMe storage directly form the laptop and creating a raw image directly to a storage hard disk, the Western Digital, 3.5-inch 2 TB hard drive.

Next, Ring testified about the statements made in his affidavit. Ring alleged that he had assistance with the affidavit. Ring indicated that the affidavit was prepared by Mr. Duval (Plaintiff's husband, who is not enrolled as an attorney in this case), and Mr. Bourque (Plaintiff's enrolled attorney), after he sent them the general duties he performed. After that, Ring stated that

Mr. Duval and Mr. Bourque presented a draft of the affidavit to him and he made edits. Ring assured the Court that everything in the affidavit was true and correct. However, Ring testified that he did not mention one of the devices in the affidavit (Western Digital 3.5 inch 2TB Drive), because it was temporary storage, and he did not feel it was necessary to mention it.

Ring testified that the image file contained on the Western Digital 3.5 inch 2TB Drive was originally deleted around August 10 or 11, 2022, after he copied the first image to its final destination (Western Digital MyPassport), and then later reformatted the device on September 13, 2022, so that it was completely wiped. Ring indicated that he did so because he knew he was going to have to transfer the data from the device and needed to ensure any sensitive information did not leave the Laptop. Further, Ring stated that he did not disclose the device's existence to anyone else. Ring testified that he made the unilateral decision to wipe the device clean because he was not given instructions by Mr. or Mrs. Duval, or her counsel to preserve the information.

Ring subsequently made several clarifications for the Court. First, Ring testified that the files in the "Megan" folder that he was requested to remove by Mr. Duval, were transferred to the Kingston DataTraveler 2.0 Flash Drive, which was then followed by transfer to the Western Digital 3.5 inch 2TB Drive. Second, Ring indicated that no one had access to the device after putting image 1 with everything else on the computer, and the specified files and folders on it. Third, Ring confirmed that the Western Digital MyPassport device was never connected directly to the Laptop. Fourth, Ring confirmed that image 2 and 3 contain the same data, but that the images are in different formats. Fifth, during this time, Ring stated that neither Mr. Duval nor Mr. Bourque were provided with any encryption information to access the images. Sixth, Ring testified that only Chad Gogh, the Defendants' retained expert, and Mr. Duval handled or had access to the information contained on the Laptop.

As to the unexplained access, Ring stated that he only accessed the devices to make sure the images were intact and the encryption keys were successful. Ring further testified that he kept the devices secure, in a storage cabinet, with separate keys for each device in each partition, until they were transferred to Mr. Duval to turn over to Defendants.

Following the hearing, this Court issued an Order, directing Plaintiff to retain a forensic expert to conduct a search of her personal email account and her personal "Microsoft Surface Pro" device, for sensitive PMC files containing patient, financial, and/or policy information (R. Doc. 55).[1]

### F.    Aftermath and the Parties' Stipulations

This Court conducted a follow up status conference on December 5, 2022, to address the Court's previous order (R. Doc. 61).  Upon review of the report of the Plaintiff's email account, the Court found that the search did not reflect any indication of sensitive PMC files, therefore, Plaintiff was not required to produce any information contained in her personal email account to Defendants. Furthermore, counsel for Plaintiff informed the Court that there was an attempt to comply with the Court's order, however, a "Bitlocker" issue arose, preventing the expert's access to the "Microsoft Surface Pro." "Bitlocker" is an encryption feature that is designed to protect data. Mr. Duval, believed that the recovery key needed to unlock the Surface Pro was in Defendants' possession. Therefore, Mr. Duval agreed to provide the Surface Pro to Defendants and allow them to search for the recovery key and conduct their own imaging.

Ultimately, Defendants were unsuccessful in finding the recovery key to access the "Microsoft Surface Pro". Therefore, Plaintiff's counsel sent a letter via the Court's email informing

---

[1] The search was limited to Plaintiff's testimony of what was contained in the files. To the extent Plaintiff's personal email account and/or "Microsoft Surface Pro" device contained PMC files, the forensic expert retained by Plaintiff was instructed to provide a report to the Court and all counsel.

the Court that the parties' have stipulated that Duval's Surface Pro will remain in the custody of Defendants' expert, Mr. Chad Gogh. Further, if at any time during the pendency of the litigation, Duval wishes to have the item returned, Mr. Bollman (Defendants' counsel) will be notified, and arrangements will be made to delete the hard drive and the appropriate software will be installed. It should be noted that the undersigned does not agree with Counsel's arrangement as to the Microsoft Surface Pro.

**E.** **The Court's Findings and Determination of Attorneys' Fees and Costs**

Based on this Court's findings, all devices at issue, including Duval's Surface Pro, are in the custody of Defendants. Additionally, the Court conducted an *in camera* review on November 1, 2022, of the files on the "Megan" folder and determined that it did in fact contain HIPAA-protected information. However, those files are in the custody of the SP Defendants and PMC as well. Moreover, Duval testified that with regard to HIPAA-related information, to the extent that any existed, she never divulged that information to anyone else that was not affiliated with PMC or Surgery Partners. Also, Counsel for SP Defendants and PMC stated at the hearing, that HIPAA notices have been sent out to affected patients, notifying them of the breach of information.

In December of 2022, the Court found that while there may be HIPPA-protected information on Duval's personal Microsoft Surface Pro, it was not able to be determined because the data was not able to be accessed due to a missing encryption key. Further, Ring confirmed that his affidavit was not completely accurate because it did not reference the Western Digital 3.5" 2TB Hard Disk Drive because it was temporary storage. However, this drive was returned on September 20, 2022, and the data was wiped.

While the Kingston DataTraveler 2.0 Flash Drive was also returned on September 20, 2022, that drive was reformatted as well at some point in time, and no data was present or

recoverable. As for the other three (3) devices (Western Digital MyPassport, 32 GB SanDisk Flash Drive, and Western Digital NVMe SSD Drive), these devices showed unexplained access with data transfers to one or more of the devices already identified.

During the evidentiary development of this matter, it became clear to the Court and the parties that some of the data may not be able to be returned for the reasons above. It also became clear that Duval's personal email account did not contain HIPAA-protected information. Finally, as to Duval's personal Microsoft Surface Pro, the parties acknowledge that no one can access the data contained on it, even though it could contain HIPPA-protected information. As it pertains to the parties' stipulation above, it is recommended that the Court should not permit Duval to retrieve the Surface Pro until the conclusion of litigation without leave of Court.

With regards to awarding SP Defendants and PMC attorneys' fees and costs, the Court recommends that they should be awarded. The court "may award costs of litigation (including reasonable attorney and expert witness fees) to any prevailing or substantially prevailing party, whenever the court determines such award is appropriate." 33 U.S.C. § 1365(d).

Here, there is good cause to award SP Defendants and PMC attorneys' fees and costs because the motion was filed on August 30, 2022, after multiple unsuccessful attempts at retrieving the devices. Further, it was not until September 13, 2022, that Duval began to return the devices at issue. Therefore, the motion was successful in getting the devices returned. Based on the totality of the facts, the Court finds successful retrieval of the devices with Court intervention sought by the Defendants. Thus, attorneys' fees and costs are appropriate.

IV.   <u>**Recommendation**</u>

**IT IS RECOMMENDED** that the Defendants' **Emergency Motion for Revindication (R. Doc. 6)** is **MOOT in part** and **GRANTED in part.**

**IT IS FURTHER RECOMMENDED** that the motion is **MOOT** as to the revindication of the devices at issue.

**IT IS FURTHER RECOMMENDED** that the motion is **GRANTED** as to Defendants' request for attorneys' fees and costs. Upon adoption of this Order, Defendants shall file a motion to set reasonable attorneys' fees and costs **no later than fourteen (14) days** from adoption, and any opposition to the motion shall be filed **no later than seven (7) days** from the filing of the motion. Defendants' motion shall include the following: (1) an affidavit attesting to its attorney's education, background, skills, and experience; (2) sufficient evidence of rates charged in similar cases by other local attorneys with similar experience, skill, and reputation and; (3) the documentation required by Local Rule 54.2.

**IT IS FURTHER RECOMMENDED** that Defendants' request for expedited discovery to assure Duval no longer possesses HIPAA-protected material is **DENIED.**

**IT IS FURTHER RECOMMENDED** that Plaintiff is not permitted to retrieve her Microsoft Surface Pro until the conclusion of litigation without leave of Court.

**IT IS FURTHER RECOMMENDED** that Defendants retrieve from the undersigned's Chambers, the USB flash drive device which contains the files of the "Megan" folder, submitted to the Court for *in camera* review, no later than **fourteen (14)** days from the issue of this Court's order.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days**

after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[2]

New Orleans, Louisiana, this 2nd day of March 2023.

_____

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[2]*Douglass* referenced the previously applicable ten-day period for the filing of objections.   Effective December 1, 2009, 28 U.S.C. ⬚ 636(b)(1) was amended to extend the period to fourteen days.