UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MEGAN DUVAL** | **CIVIL ACTION NO.** |
| | **2:22-CV-02286-WBV-KWR** |
| **Plaintiff,** | |
| | **JUDGE WENDY B. VITTER** |
| **VERSUS** | |
| | **MAGISTRATE JUDGE** |
| **PHYSICIANS MEDICAL CENTER, LLC, SURGERY PARTNERS, INC., SP MANAGEMENT SERVICES, INC., SP LOUISIANA, LLC, ANDREW KNIZELY, JEANNE OLIVIER, BRITTNEY SONNIER, TARA PELLEGRIN, SCOTT CHAPMAN, SANDRA VINCENT, AND XYZ INSURANCE COMPANIES 1-10** | **KAREN WELLS ROBY** |
| **Defendant** | |

**MEMORANDUM IN SUPPORT OF
MOTION TO SET ATTORNEYS' FEES AND COSTS**

NOW INTO COURT, through undersigned counsel, come Defendants Surgery Partners, Inc. ("SP"), SP Management Services, Inc. ("SP Management"), and SP Louisiana, LLC ("SP Louisiana") (collectively, the "SP Defendants") and Physicians Medical Center, LLC ("PMC"), appearing solely for the purpose of this Motion, reserving all rights, motions, and defenses and without waiver thereof, respectfully move this Court to enter an order awarding the SP Defendants and PMC the attorneys' fees and costs they incurred in connection with the Emergency Motion for Revindication filed in this lawsuit.

**I.    INTRODUCTION**

This saga could have been avoided. Instead, Plaintiff Megan Duval's ("Duval") actions caused the SP Defendants and PMC to expend in excess of $260,000.00 in fees and costs to meet their obligations under the Health Insurance Portability and Accounting Act of 1996 ("HIPAA")

after Duval took and then refused to return documents that included Protected Health Information ("PHI").

This Court has determined there is good cause to award the SP Defendants and PMC their fees and costs related to the Emergency Motion for Revindication Plaintiff's actions required that they file. (Dkt. 73.) After reviewing the contemporaneous time records for this matter and further exercising billing judgment to exclude *inter alia* secondary billing attorneys, expert costs, and quasi-administrative tasks, as well reducing rates for out-of-state counsel to reflect market rates in the New Orleans, the SP Defendants and PMC respectfully request $80,445.00 in attorneys' fees and costs.

## II.     FACTUAL CONTEXT

Duval could have complied with the instruction to return her company-issued laptop (the "Laptop"), not to "copy, remove, or alter any information thereon," and to "not even turn the power on." She did not. Instead, Duval and her husband hired a computer technician to remove information from the Laptop. This extraction included making copies of what turned out to be *thousands* of records of PHI that the SP Defendants and PMC were obligated to keep secure under HIPAA.

When the SP Defendants and PMC discovered that Duval was in possession of PHI without authorization, they requested, through counsel on July 29, 2022, that Duval immediately destroy the information in her possession and her computer technician's possession. Despite multiple attempts to reach Duval and her counsel, it was not until August 17, 2022 that Duval (1) confirmed that she did indeed take information from the Laptop without authorization and (2) that she would not destroy or return the information taken so that the SP Defendants and PMC could meet their obligations under HIPAA.

Before the Federal Rules of Civil Procedure required the SP Defendants and PMC to even make an appearance, Duval's actions forced the SP Defendants and PMC to file a responsive pleading in this lawsuit seeking revindication of the information Duval took on an emergent basis. It was this filing that finally spurred Duval to do what the SP Defendants and PMC had been seeking for a month. On September 1, 2022, Duval's counsel agreed to return two storage devices containing PHI to the SP Defendants and PMC and to tender a sworn affidavit from the computer technician—Patrick Ring—stating in material part that (1) he had been in exclusive possession of the two storage devices since June 25, 2022, when the information was copied onto them, and (2) that neither he nor Duval or anyone else reviewed or copied any information from those devices. So, the Parties informed the Court that the requested hearing on the SP Defendants and PMC's revindication motion could be held in abeyance pending the receipt of these devices and affidavit.

It was not until September 13, 2022, that the SP Defendants and PMC began to receive the devices. Mr. Ring's affidavit was tendered on September 16, 2022. This could have been the end of the matter. It wasn't.

Upon reviewing the devices, the forensic expert engaged by the SP Defendants and PMC determined that Mr. Ring did not tender the original storage device used to copy information from the Laptop; the files created on the substituted flash drive were created the day before the drive was sent and not on June 25, 2022. When confronted with this discrepancy, Duval's counsel confirmed that Mr. Ring transferred the files from the initial flash drive to the second flash drive and allegedly wiped all data from the drive used to copy the information from the Laptop at the onset. This explanation was not consistent with Mr. Ring's affidavit. And there were additional unexplainable accesses discovered after forensic review of the devices that were provided. This raised the distinct possibility that the PHI was transferred to other devices, thereby preventing the

SP Defendants and PMC from examining the original device used to copy the information. So, the SP Defendants and PMC were forced to return to this Court and ask for the hearing on their revindication motion to be reset to ensure that all devices containing PHI were disclosed and returned, all so SP Defendants and PMC could guarantee that no one had accessed the information while it was in Duval's and Mr. Ring's possession. Consistent with their obligations under HIPAA, Duval's actions also forced the SP Defendants and PMC to send notice to their patients alerting them of the potential disclosure of their sensitive medical information.

A hearing was set on November 1, 2022. Over the course of several hours, the Court heard testimony from Duval, Mr. Ring, and the forensic examiner engaged by the SP Defendants and PMC—Chad Gough. As recounted in the Report and Recommendation issued by Magistrate Judge Roby, the testimony affirmed that Duval and her husband directed the copying of information—including PHI—from the Laptop. Mr. Ring testified that, over the course of several weeks, the files were copied and held onto five separate devices, that all devices with the information or that had held the information before deletion were in the SP Defendants' and PMC's possession, and that the devices were securely held. Duval further testified that information might be on her email account and personal Microsoft SurfacePro. Accordingly, the Court directed review of the account and the Microsoft SurfacePro, which occurred in late November and early December. While the email account did not contain files with PHI, a finding was not possible with respect to the Microsoft SurfacePro due to encryption issues. Per the Court's order, that device remains sequestered.

Magistrate Judge Roby's report and recommendation found there was good cause to award the SP Defendants and PMC their attorneys' fees related to the efforts to successfully retrieve all devices with PHI that Duval took. This Court adopted that report and recommendation.

Now, the SP Defendants and PMC present this Motion to set attorneys' fees and costs.

## II. LEGAL STANDARD

The Supreme Court has indicated that the "lodestar" calculation is the "most useful starting point" for determining the award of attorney's fees. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The lodestar equals "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.*

Once the lodestar has been determined, the district court must consider the weight and applicability of the twelve factors delineated by the Fifth Circuit in *Johnson*. *See Watkins v. Forcide*, 7 F.3d 453, 457 (5th Cir. 1993).[1] Subsequently, if the *Johnson* factors warrant an adjustment, the court may make upward or downward adjustments to the lodestar. *Id.* The lodestar, however, is presumed to be a reasonable calculation and should be modified only in exceptional circumstances. *Id.* (citing *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992)).

The party seeking attorneys' fees bears the burden of establishing the reasonableness of the fees by submitting "adequate documentation of the hours reasonably expended" and demonstrating the use of billing judgement. *Creecy v. Metro. Prop. & Cas. Ins. Co.*, 548 F. Supp. 2d 279, 286 (E.D. La. 2008) (citing *Wegner v. Standard Ins. Co.*, 129 F.3d 814, 822 (5th Cir. 1997)).

---

[1] The twelve *Johnson* factors are (1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to this case; (5) the customary fee; (6) whether fee is fixed or contingent; (7) time limitations; (8) the amount involved and results obtained; (9) the experience, reputation and ability of counsel; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974). The SP Defendants and PMC do not assert these factors require an adjustment.

### III.     FEE REQUEST

The SP Defendants and PMC make a fee request that is not only supported by adequate documentation, but also demonstrates use of billing judgment.   This request of $80,445.00 should be awarded in full.

####    A.     Reasonable Hourly Rate

The SP Defendants and PMC request fees related to work performed by six attorneys and one paralegal.

**Rachel Cowen**, lead counsel for the SP Defendants, has thirty years' experience as a labor and employment attorney. (Cowen Declaration at ¶ 3, 6.)  Ms. Cowen is currently a partner at McDermott Will & Emery, LLP, an international law firm. (Cowen Declaration at ¶ 2.)  She is based out of Chicago, Illinois. (Cowen Declaration at ¶ 2.)   Her practice includes employment discrimination and wrongful termination lawsuits and investigations, as well restrictive covenant and unfair competition matters.  (Cowen Declaration at ¶ 3.)  Evidence of her knowledge and skill can be seen in some of the results obtained for clients, including winning summary judgment for an automotive and industrial technology company in a national origin discrimination claim where the plaintiff alleged the manager told him directly he was paid less because he was Brazilian and winning summary judgment for a multinational financial services company in an age discrimination claim in which the EEOC had issued a finding of probable cause. (Cowen Declaration at ¶ 3.)

Ms. Cowen has also successfully argued multiple cases before state and federal appellate courts. (Cowen Declaration at ¶ 3.)   Additionally, she has extensive experience in matters involving forensic evidence. (Cowen Declaration at ¶ 4.)   Ms. Cowen is a Fellow of the College of Labor and Employment Lawyers, a non-profit professional association that recognizes leading

members of the labor and employment community by promoting achievement, advancement, and excellence in the practice. (Cowen Declaration at ¶ 5.)  The SP Defendants compensate Ms. Cowen at a rate of $1,400.00 per hour. (Cowen Declaration at ¶ 7.)  This is a rate that she customarily charges her clients. (Cowen Declaration at ¶ 7.)

**Ryan Higgins**, counsel for the SP Defendants, has fifteen years' experience as a healthcare attorney. (Cowen Declaration at ¶ 9.)  Mr. Higgins is currently a partner at McDermott Will & Emery. (Cowen Declaration at ¶ 9.)  He is based out of Chicago, Illinois. (Cowen Declaration at ¶ 9.)  Mr. Higgins advises a broad range of hospitals, health systems, digital health companies, and other health care entities on matters related to HIPAA, health information privacy, and cybersecurity matters. (Cowen Declaration at ¶ 9.)  The SP Defendants compensate Mr. Higgins at a rate of $1,300.00 per hour. (Cowen Declaration at ¶ 9.)  This is a rate that he customarily charges his clients. (Cowen Declaration at ¶ 9.)

**Barrick Bollman**, counsel for the SP Defendants, has four years' experience as a labor and employment attorney. (Cowen Declaration at ¶ 10.)  Mr. Bollman is currently an associate at McDermott Will & Emery. (Cowen Declaration at ¶ 10.)   He is based out of Chicago, Illinois. (Cowen Declaration at ¶ 10.)  Prior to joining McDermott Will & Emery, Mr. Bollman served as a law clerk for the Honorable Kenneth F. Ripple of the United States Court of Appeals for the Seventh Circuit for one year. (Cowen Declaration at ¶ 10.)  Mr. Bollman has experience in a wide variety of labor and employment matters, including discrimination matters, wage and hour matters, and restrictive covenant matters. (Cowen Declaration at ¶ 10.)  Mr. Bollman often serves as the lead associate in his matters and performs more demanding tasks than other attorneys with the same amount of years' experience. (Cowen Declaration at ¶ 10.)   This has included drafting and arguing multiple dispositive motions with favorable results. (Cowen Declaration at ¶ 10.)  Among

these, Mr. Bollman successfully argued an appeal to the United States Court of Appeals for the Sixth Circuit. (Cowen Declaration at ¶ 10.)  The SP Defendants compensate Mr. Bollman at a rate of $965.00 per hour. (Cowen Declaration at ¶ 10.)  This is a rate that he customarily charges his clients. (Cowen Declaration at ¶ 10.)

**Kim Boyle**, local counsel for the SP Defendants, has almost thirty-six years' experience as an attorney, with almost twenty-two years' specialized experience in labor and employment. (Boyle Declaration at ¶¶ 3, 6.)  Ms. Boyle is currently a partner at Phelps Dunbar LLP, a southeastern law firm headquartered in New Orleans, Louisiana, where Ms. Boyle is based. (Boyle Declaration at ¶ 2.)  Ms. Boyle's practice includes representing employers in retaliation and discrimination claims as well as workplace harassment. (Boyle Declaration at ¶ 3.)  Evidence of her knowledge and skill can be seen in the results she has obtained for her clients, including the successful defense of a Fortune 500 client in a state court jury trial against claims of race discrimination, hostile work environment, and retaliation where the verdict was affirmed on appeal. (Boyle Declaration at ¶ 3.)  Ms. Boyle has also successfully argued multiple cases before state and federal courts of appeals. (Boyle Declaration at ¶ 3.)  She is a member of the American College of Trial Lawyers and has been rated AV Preeminent by Martindale-Hubbell Peer Rating and ranked in Band 1 of Chambers and Partners' rankings of labor and employment lawyers in Louisiana. (Boyle Declaration at ¶ 4.)  The SP Defendants compensate Ms. Boyle at a rate of $400 per hour. (Boyle Declaration at ¶ 7.)  This is a rate she customarily charges clients similar to the SP Defendants. (Boyle Declaration at ¶ 7.)

**Ashley Heilprin**, local counsel for the SP Defendants, is an attorney with ten years' experience. (Boyle Declaration at ¶ 9.) Ms. Heilprin is currently a partner at Phelps Dunbar. (Boyle Declaration at ¶ 9.)  She is based in New Orleans, Louisiana. (Boyle Declaration at ¶ 9.)  Ms.

Heilprin has extensive courtroom experience, including obtaining three favorable verdicts as first chair counsel. (Boyle Declaration at ¶ 9.)   The SP Defendants compensate Ms. Heilprin at a rate of $350 per hour. (Boyle Declaration at ¶ 9.)   This is a rate she customarily charges clients similar to the SP Defendants. (Boyle Declaration at ¶ 9.)

**Pam Picciola** is a senior paralegal with over thirty-five years' experience.  (Boyle Declaration at ¶ 10.)   She is employed by Phelps Dunbar, and is based in New Orleans, Louisiana. (Boyle Declaration at ¶ 10.)   Ms. Picciola frequently completes high-level tasks often delegated to associate attorneys. (Boyle Declaration at ¶ 10.)   The SP Defendants compensate Ms. Picciola at a rate of $165 per hour. (Boyle Declaration at ¶ 10.)   This is a rate Phelps Dunbar LLP customarily charges its clients similar to the SP Defendants for Ms. Picciola's services. (Boyle Declaration at ¶ 10.)

**Duris Holmes**, lead counsel for PMC, has almost thirty-seven years' experience as a business lawyer. (Holmes Declaration at ¶ 3.)    He is a partner at Deutsch Kerrigan. L.L.P., a litigation focused New Orleans law firm. (Holmes Declaration at ¶ 3.)   Mr. Holmes has been a recipient of the City Business Leadership in Law Award and recognized in Best Lawyers, New Orleans Magazine Best in Lawyers, and The Best Lawyers in America. (Holmes Declaration at ¶ 4.)   He also has been rated AV Preeminent by Martindale-Hubbell Peer Rating. (Holmes Declaration at ¶ 4.)    PMC compensates Mr. Holmes at a rate of $375 per hour. (Holmes Declaration at ¶ 7.)   This is a rate he customarily charges his clients. (Holmes Declaration at ¶ 7.)

In the Fifth Circuit, a rate is prima facie reasonable where the rate requested is the individual's customary billing rate and the rate falls within the prevailing market rate. *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 328 (5th Cir. 1995).

Here, Ms. Boyle, Ms. Heilprin, Ms. Picciola, and Mr. Holmes request their customary rates of $400, $350, $165, and $375 respectively. (Boyle Declaration at ¶¶ 7, 9, 10; Holmes Declaration at ¶ 7.) Each rate falls within the market rate for attorneys in New Orleans. (Boyle Declaration at ¶ 11; Holmes Declaration at ¶ 8.) *See, e.g.*, *Cajun Servs. Unlimited, LLC v. Benton Energy Serv. Co.*, Civil Action No. 17-491, 2020 WL 375596, at *5 (E.D. La. Jan. 23, 2020) (determining a reasonable rate for partners in New Orleans with comparable experience to be between $350.00 - $450.00 per hour); *Loiacano v. DISA Glob. Sols.*, No. CV 14-1750, 2016 WL 2926679, at *2 (E.D. La. May 19, 2016) (awarding $150 per hour for paralegal's work). Each rate is reasonable.

The SP Defendants recognize that Ms. Cowen's, Mr. Higgins', and Mr. Bollman's customary rates exceed that in the New Orleans market and that the Fifth Circuit calculates reasonable rates based on the prevailing market rate of the forum. *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381 (5th Cir. 2011). Accordingly, the SP Defendants requests a rate of $500 per hour for Ms. Cowen (a discount of $900 per hour), a rate of $425 per hour for Mr. Higgins (a discount of $875 per hour), and a rate of $340 per hour for Mr. Bollman (a discount of $575 per hour). The SP Defendants made these reductions after reviewing the case law establishing prevailing market rates for attorneys with comparable experience, knowledge, and skill, *see, e.g.*, *Cajun Services* in 2020. 2020 WL 375596, at *5, and adjusting those rates for inflation and the average rate increase from 2020 through 2022.[2] *See Thibeaux v. Principi*, No. CIV. 04-1609, 2008 WL 5416408, at *3 (W.D. La. Dec. 8, 2008) ("[T]his court awarded a fee of $215 an hour in a

---

[2] *See* Andrew Maloney, *Inflation May be Beating Billing Rate Increases*, The American Lawyer (Oct. 12, 2022), https://www.law.com/americanlawyer/2022/10/12/billing-rate-increases-have-significantly-slowed-even-as-inflation-took-off/ (explaining "the average increase for partners in 2021 was 3.3%, and in 2022 it's 4.8%, he noted, using that approach for calculations. For associates in 2021, the increase was 6.9%, and in 2022, it's 7.8%").

10

similar employment discrimination case five years ago. Considering even modest inflation, a fee of $250 in this district is reasonable.").

### B.     Reasonable Hours Expended and Billing Judgment

Fee applicants must exercise "billing judgment" in good faith with respect to the hours expended; this requires documentation of the hours charged and the writing-off of unproductive, excessive, or redundant time. *See, e.g.*, *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983); *Saizan v. Delta Concrete Prods. Co., Inc.*, 448 F.3d 795, 799 (5th Cir. 2006).   Such judgment has been exercised here.

To begin, the documentation attached to the declarations supporting this Motion are excerpts of contemporaneous billing records of each timekeeper rather than after-the-fact reconstructions. (Cowen Declaration at ¶ 11; Boyle Declaration at ¶ 12; Holmes Declaration at ¶ 12.)

Further, the Motion does not include a request for fees for four additional timekeepers. (Cowen Declaration at ¶ 8.)  This includes associates who performed supporting research and evidence review, and partners who provided additional advice and strategic input related to Duval's taking of the Laptop and its information. (Cowen Declaration at ¶ 8.)  Indeed, with respect to out-of-state counsel, the SP Defendants only request fees for Ms. Cowen, Mr. Higgins, and Mr. Bollman.  Ms. Cowen serves as lead counsel and has actively participated in this matter through communications with Duval's counsel, determining the availability of the relief requested and advising the SP Defendants on the same, revising the relevant pleadings, and leading the examination of witnesses at hearings. (Cowen Declaration at ¶ 8.)

Mr. Higgins is a subject matter expert on HIPAA and was necessary to provide advice and counsel to the SP Defendants on the HIPAA notification required as a result of Duval's action and input to Ms. Cowen and Mr. Bollman to ensure that the evidentiary hearing elicited the information

11

necessary to make additional determinations regarding HIPAA notification. (Cowen Declaration at ¶ 8.)  Mr. Bollman is the lead associate on this matter and had primary responsibility for drafting all pleadings and associated legal research, evidence review and preparation of witness examinations, representation at all relevant status conferences, and examination of witnesses at hearing. (Cowen Declaration at ¶ 8.)

The SP Defendants and PMC have also closely scrutinized the contemporaneous billing records to remove entries that reflected quasi-administrative tasks performed by attorneys, duplicative tasks, tasks not performed in connection to the recovery of the information at issue, and block bills that included time not related to the recovery of the information at issue. (Cowen Declaration at ¶ 12; Boyle Declaration at ¶ 13; Holmes Declaration at ¶ 13.)   The SP Defendants, moreover, do not request the costs incurred by their forensic experts. (Cowen Declaration at ¶ 12.) The SP Defendants and PMC, moreover, do not seek costs, including travel expenses. (Cowen Declaration at ¶ 12; Boyle Declaration at ¶ 13; Holmes Declaration at ¶ 13.)

Lastly, and although that is permitted under Fifth Circuit law, the SP Defendants and PMC do not request fees for hours spent preparing this Motion. *See, e.g.*, *Riley v. City of Jackson*, 99 F.3d 757, 760 (5th Cir. 1996); *Cruz v. Hauck*, 762 F.2d 1230, 1233–35 (5th Cir. 1985).

As a result of the SP Defendants and PMC's billing judgment, the SP Defendants and PMC do not include at least 68.90 hours of attorney time related to the motion for revindication and efforts to ensure the security and return of PHI that they might have otherwise requested. (Cowen Declaration at ¶ 13.)

In sum, the SP Defendants and PMC request fees for the following time expended:

| Timekeeper | Hours | Rate | Total |
| --- | --- | --- | --- |
| Rachel Cowen | 46.30 | $500.00 | $23,150.00 |
| Ryan Higgins | 11.20 | $425.00 | $4,760.00 |

| Barrick Bollman | 83.30 | $340.00 | $29,342.00 |
| Kim Boyle | 22.50 | $400.00 | $9,000.00 |
| Ashley Heilprin | 7.20 | $350.00 | $2,520.00 |
| Pam Picciola | 15.20 | $165.00 | $2,508.00 |
| Duris Holmes | 24.20 | $375.00 | $9,165.00 |

This is a reasonable amount of time expended.  Resolving these issues required *inter alia* multiple rounds of discussions and negotiations with opposing counsel; the drafting of a counterclaim and emergency motion for revindication, including associated research, fact review, and preparation of affidavits; further briefing necessitated by Duval's failure to return all devices requested and Duval's contesting the scope of the revindication hearing; review of forensic analysis and multiple communications with relevant experts; preparation for a several hour hearing that involved four witnesses; and participation in a several hour evidentiary hearing.

**III.   CONCLUSION**

Therefore, the SP Defendants and PMC request this Court award $80,445.00 in attorneys' fees and costs, and any other relief this Court deems just and proper.

Respectfully submitted,

| **DEUTSCH KERRIGAN, L.L.P.** | **PHELPS DUNBAR LLP** |
|---|---|
| By:  */s/ Duris L. Holmes (with permission)*<br>Duris L. Holmes (#17629)<br>755 Magazine Street<br>New Orleans, LA 70130<br>Telephone:  (504) 581-5141<br>dholmes@deutschkerrigan.com<br><br>**ATTORNEYS FOR DEFENDANT PHYSICIANS MEDICAL CENTER, LLC** | By:   */s/ Kim M. Boyle*<br>Kim M. Boyle La. Bar No. 18133<br>Canal Place | 365 Canal Street, Suite 2000<br>New Orleans, Louisiana 70130<br>Telephone: 504 566 1311<br>Facsimile: 504 568 9130<br>Email: boylek@phelps.com<br><br>AND<br><br>**MCDERMOTT WILL & EMERY LLP** |

13

        Rachel B. Cowen (pro hac vice)
        J. Barrick Bollman (pro hac vice)
        444 W. Lake Street, Ste. 4000
        Chicago, IL 60606
        rcowen@mwe.com
        jcnemeth@mwe.com
        bbollman@mwe.com
        (312) 372-2000

**ATTORNEYS FOR SURGERY PARTNERS, INC., SP MANAGEMENT SERVICES, INC., AND SP LOUISIANA, LLC**

PD.41695893.1